# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

UNITED STATES,
 *Plaintiff*,

v.

ARTHUR STANLEY, MELKUAN SCOTT
 *Defendants.*

No. 3:23-cr-0027 (VAB)

## ORDER ON MOTION TO SEVER AND MOTIONS *IN LIMINE*

Melkuan Scott and Arthur Stanley ("Defendants") have each been charged with kidnapping resulting in death, in violation of 18 U.S.C. §§ 1201(a)(1) and (2) ("Count One"), and causing death through use of a firearm, in violation of 18 U.S.C. §§ 924(j)(1) and (2) ("Count Two"). Indictment, ECF No. 1 (Feb. 14, 2023) ("Indictment").

Mr. Stanley has filed a motion to sever and six motions *in limine.*

Mr. Scott has filed two motions *in limine.*

The Government has objected to the motion to sever and both motions *in limine*. The Government has additionally moved to make opening statements.

For the following reasons, Mr. Stanley's motion to sever is **GRANTED**; Mr. Scott's motions *in limine* are **GRANTED in part** and **DENIED in part**; Mr. Stanley's motions *in limine* are **DENIED**; and the motion to make opening statements is **DENIED**.

Mr. Scott's motion *in limine* to preclude evidence of alleged gang affiliation is **GRANTED**.

Mr. Scott's motion *in limine* to preclude the admission of summary charts is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude evidence of alleged gang affiliation is **DENIED**, without prejudice to renewal at trial.

1

Mr. Stanley's motion *in limine* to preclude introduction of Mr. Stanley's felony conviction and current life sentence is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude statements from Witness 2 as inadmissible hearsay is **DENIED as moot**.

Mr. Stanley's motion *in limine* to preclude evidence related to the death of Mr. Perry is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude "inconclusive" DNA results is **DENIED**.

The Court's rulings on the motions *in limine*, however, are "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce v. United States*, 469 U.S. 38, 41 (1984).

The Government's motion to make an opening statement is **DENIED**.

In lieu of an opening statement, the parties for Mr. Scott's trial shall endeavor to create a joint statement of the case or, if not joint, two separate statements by the pre-trial conference on May 8, 2025. If not joint, the Court will determine the statement of the case to be read to the jury instead of opening statements.

The current trial schedule will remain in place as to Mr. Scott only, with jury selection to begin on May 15, 2025, and trial to begin on May 19, 2025.

Mr. Stanley's trial will be scheduled by the Court in consultation with the parties, at which time the necessary Speedy Trial Act findings will be made.

I.      **BACKGROUND**

   **A. Factual Allegations**

Mr. Scott and Mr. Stanley are alleged to have kidnapped and murdered Serafin Velez, during and in relation to a conspiracy to possesses with intent to distribute marijuana. *See* Indictment.

**B. Procedural History**

On February 5, 2025, Mr. Stanley filed a motion to sever defendant and a memorandum in support. Mot. to Sever, ECF No. 47 (Feb. 2, 2025); Memo. in Supp., ECF No. 49 (Feb. 2, 2025) ("Memo. in Supp.").

On February 28, 2025, the Government filed a memorandum in opposition to the motion to sever. Memo. in Opp., ECF No. 61 (Feb. 28, 2025) ("Opp. to Severance").

On March 14, 2025, Mr. Stanley filed a reply to the Government's memorandum in opposition to the motion to sever. Response/Reply, ECF No. 65 (Mar. 14, 2025) ("Reply").

On March 28, 2025, Mr. Stanley filed six motions *in limine*. Mot. *in Limine*, ECF No. 77 (Mar. 28, 2025) ("Stanley MIL").

On April 8, 2025, Mr. Scott filed two motions *in limine* and an accompanying memorandum in support. Mot. in *Limine*, ECF No. 80 (Apr. 8, 2025); Memo. in Supp., ECF No. 81 (Apr. 8, 2025) ("Scott MIL").

On April 16, 2025, the Court held a hearing on the motion to sever. Min. Entry, ECF No. 88 (Apr. 16, 2025).

On April 18, 2025, the Government filed an omnibus memorandum in opposition to both Mr. Scott's and Mr. Stanley's motions *in limine*. Memo. in Opp., ECF No. 89 (Apr. 18, 2025) ("Opp. to MILs"). The memorandum included a motion to make opening statements. *Id.*

On April 25, 2025, both Mr. Scott and Mr. Stanley filed replies to the memorandum in opposition. Reply to Response by Melkuan Scott, ECF No. 95 (Apr. 25, 2025); Response/Reply by Arthur Stanley, ECF No. 96 (Apr. 25, 2025).

## II.    STANDARD OF REVIEW

### A.  Motion to Sever

Under Federal Rule of Criminal Procedure 8(b), an indictment may charge two or more defendants if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Joinder of multiple defendants is proper "only if the charged acts are part of a series of acts or transactions constituting an offense or offenses." *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988) (internal quotation marks and citation omitted). "[M]ultiple defendants cannot be tried together on two or more 'similar' but unrelated acts or transactions . . . ." *Id.*

Even if defendants are properly joined "the court may order separate trials of counts, sever the defendants' trial, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Page*, 657 F.3d at 129 (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

The Supreme Court has made clear that the burden for severance is high, and a district court should sever "only if there is serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The "defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d

Cir. 1998). In many cases, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539.

### B.  Motions *in Limine*

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce*, 469 U.S. at 40 n.2; *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce*, 469 U.S. at 41 n.4).

A court should exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted). The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

## III.  DISCUSSION

### A.  Motion to Sever

When considering a motion to sever a defendant, courts are generally guided by several factors:

> (1) the number of defendants and the number of counts; (2) the complexity of the indictment; (3) the estimated length of the trial; (4) disparities in the degrees of involvement by defendants in the overall scheme; (5) possible conflict between various defense theories; and (6) prejudice resulting from evidence admissible as to some defendants, but not others.

*United States v. Moody*, 660 F. Supp. 2d 340, 343 (D. Conn. 2009) (quoting *United States v. Ramos*, 346 F. Supp. 2d 567, 570 (S.D.N.Y. 2004)). No single factor is dispositive; rather, each is meant to "provide guidance as to whether a jury will be capable of considering the evidence as to each defendant separately, independent of evidence against co-defendants." *Ramos*, 346 F. Supp. 2d at 570 (quoting *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987)). The Court must consider the risks of prejudice to the defendant in light of the specific facts of the case. *Zafiro*, 506 U.S. at 539 ("The risk of prejudice will vary with the facts in each case[.]").

Mr. Stanley argues that if the trial were to proceed against both co-defendants, he would face prejudice because a significant portion of the evidence would be about "the drug deal gone bad alleged by the government" that did not involve Mr. Stanley. Memo. in Supp. at 9. Mr. Stanley also argues that the Government will seek to admit evidence related to the aftermath of the alleged murder, including evidence regarding Mr. Scott's alleged desire to "silence" a witness of the murder. *Id.* at 10.

The Government argues that the case is "not complex" enough to warrant severance because "it will be clear to the jury which evidence is admissible against which defendant." Opp. to Severance at 1.

In response, Mr. Stanley argues that the risk of the jury "conflating" the evidence against both defendants is sufficiently prejudicial to warrant severance, especially considering that no conspiracy has been charged in this case. Reply at 2–4.

The Court agrees.

Long ago, the U.S. Supreme Court reminded trial judges of their "continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516 (1960). Notwithstanding the Government's repeated declaration that this case is

"straightforward," Opp. to Severance at 1 ("[H]ere, the case is straightforward . . . ."); *id.* at 8 (arguing that separate trials are not warranted "especially in a straightforward case . . . ."); *id.* at 9 ("This case is a straightforward case . . . ."), the structure of the indictment, disparity of involvement in many of the events surrounding the alleged crime, and the risk of prejudice resulting from evidence admissible as to only Mr. Scott weigh in favor of severance.

While this case is not complex in terms of the number of counts and defendants—Mr. Scott and Mr. Stanley are the only two defendants charged with one count of kidnapping resulting in death, in violation of 18 U.S.C. §§ 1201(a)(1) and (2), and one count of causing death through use of a firearm, in violation of 18 U.S.C. §§ 924(j)(1) and (2), Indictment; Opp. to Severance at 7 ("[T]his case involves two defendants charged in two counts regarding one homicide.")—the case's simplicity ends there. *Cf. Gallo*, 668 F. Supp. at 750 ("As the number of counts and defendants in an indictment increases, it is obvious that the resultant complex trial record makes it more difficult for a jury to keep straight the specific evidence and charges against each defendant." (internal quotation marks and citations omitted)).

For example, Count Two, causing death through use of a firearm, requires the government to prove that Mr. Velez was murdered "in relation to and in furtherance of a drug trafficking crimes for which [Defendants] may be prosecuted . . . specifically, attempt and conspiracy to possesses with intent to distribute marijuana." *Id.* Thus, while there is no formally charged conspiracy, in order to prove Count Two, the Government must prove that Mr. Scott and Mr. Stanley participated in a drug trafficking crime beyond a reasonable doubt. *See also* Proposed Jury Instructions by USA, ECF No. 71 (Mar. 28, 2025) ("The first element, which the government must prove beyond a reasonable doubt, is that the defendant committed at least one drug trafficking crime for which he can be prosecuted in a court of the United States.").

But Mr. Stanley allegedly had no involvement whatsoever in this underlying drug trafficking crime—specifically, one involving the "attempt and conspiracy to possess with intent to distribute marijuana," Indictment at 2—until immediately before the alleged murder of the victim, Serafin Velez. *See* Opp. to Severance at 4 ("[T]he government's case against [Mr. Stanley] rests significantly on a witness who the government expects will testify that he knew Stanley and Scott, that he was present for discussions about the drug deal that led to the killing, and that he personally witnessed Stanley and Scott shoot and kill Velez."). Indeed, to the extent that there was a failed drug deal between Mr. Scott and Mr. Velez, Mr. Stanley is not alleged to have participated in the arrangement of the drug sale with Mr. Velez, provided monetary investment for the sale, or confronted and assaulted Mr. Velez immediately after the sale failed. Memo. in Supp. at 9.

Mr. Stanley's late and limited involvement in the alleged drug trafficking crime thus creates the risk of prejudicial spillover from the volume of evidence to be submitted regarding Mr. Scott's alleged actions in the drug deal. Particularly, there is a concern that the jury will associate all of the evidence against Mr. Scott as evidence against Mr. Stanley. *See United States v. Gilbert*, 504 F. Supp. 565, 571 (S.D.N.Y. 1980) ("In any event, there appears to be no dispute that Revson did not become implicated in the Conrac trading until the alleged conspiracy, masterminded by Gilbert, had been in operation for over a year[.] . . . Revson has made a sufficient showing of disproportionate involvement in the scheme to raise a substantial risk that he would be prejudiced by the gradually accumulating effect of evidence of Gilbert's wrongdoing, at times long before Revson began to purchase Conrac, and in connection with transactions where Revson no part, or where his involvement was directed by others without full disclosure to Revson. . . . The risk in the case at bar is that a jury, considering volumes of

evidence with respect to investors or dealers in a company's stock may tend to associate all investors with the wrongdoing of the architect of the scheme."); *United States v. Burke*, 789 F. Supp. 2d 395, 399 (E.D.N.Y. 2011) (finding severance appropriate when one defendant's action's in a conspiracy were "limited in scope and in time").

Generally, the "likelihood of spillover prejudice is diminished when there is a conspiracy charge uniting the moving defendants with the non-moving defendants." *See United States v. Eady*, No. 19-cr-170-A, 2023 WL 3335279, at *9 (W.D.N.Y. May 10, 2023); *id.* at 10 (noting that "this case is distinguishable from the many cases in this Circuit where severance has been denied because of—at least in part—an overarching conspiracy" (citations omitted)). Here, however, although the Government must prove drug trafficking as part of the murder charge, there is no conspiracy for the murder itself, and thus there is no overarching conspiracy to "diminish" the risk of prejudicial spillover.

And, if the Government's witness is unable to connect Mr. Stanley to the drug trafficking crime, Mr. Stanley may be prejudiced by the presentation of evidence of a serious drug crime that no longer has significant relevance to the charges against him. *Cf. United States v. DiNome*, 954 F.2d 839, 844–45 (2d Cir. 1992) (reversing conviction when defendants were tried after dismissed conspiracy charges made a portion of the evidence irrelevant and inadmissible); *id.* ("Once the RICO charges against the Hellmans were dismissed, all but an infinitesimal fraction of the evidence at this sixteen-month trial lost any relevance to the mail and wire fraud charges against them. Instead of being swamped by this mass of irrelevant evidence, these charges should have been tried separately."); *Schaffer*, 362 U.S. at 516 ("Nor can we fashion a hard-and-fast formula that, when a conspiracy count fails, joinder is error as a matter of law. We do emphasize, however, that, in such a situation, the trial judge has a continuing duty at all stages of the trial to

grant a severance if prejudice does appear. And where, as here, the charge which originally justified joinder turns out to lack the support of sufficient evidence, a trial judge should be particularly sensitive to the possibility of such prejudice.").

Moreover, the Government intends to introduce evidence related to the death of another witness to Mr. Velez's alleged kidnapping and murder, Melvin Perry. This evidence will include statements by Mr. Scott allegedly expressing his concerns that Mr. Perry was talking to law enforcement and sharing his desire to kill or silence Mr. Perry. *See id.* at 9 ("[S]ome of the evidence against Scott will concern murder (whether statements about the Velez murder or about Scott's interest in silencing Perry).")

These proposed statements create another avenue for prejudicial spillover, as the jury could be unduly influenced by the alleged statements of Mr. Scott when determining the verdict for Mr. Stanley. *See, e.g.*, *United States v. Cook*, No. 3:17-cr-065 (SRU), 2018 WL 2303016, at * 11 (D. Conn. May 21, 2018) ("The government apparently intends to offer Rule 404(b) evidence with respect to at least one such prior act . . . . Lee is not alleged to have participated in the Keaton robbery or in any of the defendants' other prior acts. . . . I fear there is a 'serious risk' that the introduction of substantial amounts of Rule 404(b) evidence against the other defendants might 'prevent the jury from making a reliable judgment about [Lee's] guilt or innocence.'" (quoting *Zafiro*, 506 U.S. at 539) (citations omitted).[1]

The Government argues that, to the extent any prejudice exists, limiting instructions are sufficient. Given the seriousness of the crime and substantially prejudicial nature of the proposed evidence—drug trafficking, violent assault, and a potential retaliatory killing—however, severance is more appropriate to address the "serious risk that a joint trial would . . . prevent the

---

[1] In addition, as discussed further below, severance would also minimize, if not eliminate, the need for the introduction of "West Hell" gang testimony in Mr. Scott's trial.

jury from making a reliable judgment about guilt or innocence." *Zafiro*, 508 U.S. at 539; *see United States v. Cardascia*, 951 F.2d 474, 483 (2d Cir. 1991) ("Relief by severance may be appropriate when the unrelated evidence reflects activities of a violent nature because the risk of substantial prejudice is greater.").

Finally, while severing the Defendants will require some duplicative presentation of evidence, the repetition of some evidence in a relatively short trial—set to be around one week—will not significantly hamper judicial efficiency, and will ultimately reduce the risk of unwarranted prejudice for both defendants. *See DiNome*, 954 F.2d at 845 (finding that defendants should have been severed when "[s]uch a trial could have been completed in a very short period of time, with the risk of spillover prejudice entirely eliminated"). Thus "under the extraordinary and unique facts presented here, and in an abundance of caution, the court finds that severance is warranted." *United States v. Shkreli*, 260 F. Supp. 3d 247, 257 (E.D.N.Y. 2017).

Accordingly, the motion for severance is granted.

### B.  Motions *in Limine* by Melkuan Scott

Mr. Scott moves to preclude the Government from introducing evidence involving his alleged membership in the "West Hell" gang and from introducing evidence that consists of summary charts. Scott MIL at 1, 4.[2]

The Court considers each motion in turn.

### 1.  Gang Affiliation

Federal Rule of Evidence 404(b) prohibits the admission of other crimes, wrongs or acts to "prove that on a particular occasion the person acted in accordance with the character or trait."

---

[2] Mr. Scott additionally joins Mr. Stanley's motions *in limine*, to the extent appliable. Scott MIL at 7. In light of this joinder and the severance of the Defendants, the Court will consider the arguments regarding opening statements as applicable to both Mr. Stanley and Mr. Scott, and addresses the issue jointly below.

Fed. R. Evid. 404(b)(1). Other crimes, wrongs, or acts may be admissible, however, to prove "motive, opportunity, intent, preparation, plan, knowledge, identity absence of mistake, or lack of accident." *Id.* 404(b)(2). And, evidence related to conduct that "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial" is not considered to be evidence of "other crimes, wrongs, or acts" subject to Rule 404(b). *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)).

Under the Second Circuit's "inclusionary" approach, Rule 404(b) evidence may be admitted "for any purpose other than to demonstrate criminal propensity." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022) (quoting *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012)). The "inclusionary" approach, however, "'is not a carte blanche to admit prejudicial extrinsic act evidence [that] is offered to prove propensity' or otherwise to allow 'propensity evidence in sheep's clothing.'" *Id.* (quoting *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009)).

To admit Rule 404(b) evidence in a criminal case, the Government must "provide reasonable notice of any such evidence" and "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence." Fed. R. Evid. 404(b)(3). To fulfil the notice requirement, the Government must "provide not only the 'general nature' of the evidence but also . . . 'describ[e] the specific act that the evidence would tend to prove, and . . . explain the relevance of the evidence for non-propensity purpose." *United States v. Patel*, No. 3:21-cr-220 (VAB), 2023 WL 2643815, at *26 (D. Conn. Mar. 27, 2023) (quoting Fed. R. Evid. 404 Committee Notes (2020 Amendment)).

In all cases, Federal Rule of Evidence 403 requires the Court to exclude evidence "if its probative value is substantially outweighed by the danger of one of more of the following: unfair prejudice, confusing the issues, or misleading the jury, undue delay, wasting of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Mr. Scott argues that any evidence pertaining to "West Hell" gang membership is neither admissible as "inextricable intertwined" to these offenses, nor for any permissible purpose under Rule 404(b). Scott MIL at 2.

The Government argues that evidence related to Mr. Scott's alleged "West Hell" membership is permissible to show the "nature and closeness of Scott's and Stanley's relationship" and explain why Mr. Stanley "would suddenly appear" to allegedly murder Mr. Velez. Opp. to MILs at 2, 4.

The Court disagrees, in light of the severance of the Defendants' trials.

The Government sets forth no rationale as to how any alleged gang membership is relevant to proving any part of the case against Mr. Scott. Furthermore, the Government does not contend that the events alleged in this case were "inextricably intertwined" to the "West Hell" gang. As the trials against Mr. Scott and Mr. Stanley will now be proceeding separately, there is no apparent relevance for any evidence regarding the "West Hell" gang in Mr. Scott's trial.

According, the motion *in limine* to preclude evidence of alleged "West Hell" gang membership will be granted.

### 2. Summaries, charts, and illustrative aids

Under Rule 1006, parties may introduce as evidence "a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006(a). A summary, chart, or

calculation "that functions only as an illustrative aid" is not governed by Rule 1006, and is instead governed by Rule 107. *Id.* 1006(c). A "quintessential summary" is one used to "avoid forcing the jury to examine boxes of documents in order to make simple calculations." *Fagiola v. Nat'l Gypsum Co. AC & S., Inc.*, 906 F.2d 53, 57 (2d Cir. 1990); *see also United States v. Blackwood*, 366 F. App'x 207, 212 (2d Cir. 2010) ("[T]he charts summarized information that otherwise would have been difficult for the jury to synthesize and evaluate, thus falling well within the purview of Rule 1006.").

To admit a summary, chart, or calculation under Rule 1006, the offering party "must make the underlying originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." Fed. R. Evid. 1006(b).

Under Rule 107, a party can use an illustrative aid "to help the trier of fact understand the evidence or argument if the aid's utility in assisting comprehension is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time." *Id.* 107(a). Documents used as illustrative aids are not admitted into evidence and generally "must not be provided to the jury during deliberations." *Id.* 107(b).

Mr. Scott argues that the Government should not be able to "offer into evidence at trial any demonstratives, summary exhibits, or other PowerPoint-like presentations that merely seek to organize or summarize the evidence for the jury." Scott MIL at 4. Mr. Scott additionally requests that the Court order reasonable disclosure of any summary or chart admitted under Rule 1006 and an illustrative aid used under Rule 107. *Id.* at 6–7.

The Government states that it intends to submit charts as evidence only for the purposes allowed by Rule 1006. Opp. to MILs at 12. As examples, the Governments states that it may offer into evidence a summary chart regarding phone records from multiple individuals and a

summary of "extensive cell-site data." *Id.* The Government argues these charts should be admitted into evidence under Rule 1006. *Id.*

The Court agrees, at this time.

To the extent that the Government wishes to introduce a summary of a large volume of cell-site data that otherwise would not be able to be conveniently examined by the jury, such evidence is admissible under Rule 1006. *See Blackwood*, 366 F. App'x at 212 (affirming the admission into evidence of "charts prepared by government agents that summarized certain phone records"). If, upon review, it becomes apparent that the evidence underlying the summary can be conveniently reviewed by the jury directly, the Court will revisit this decision. *See Highland Capital Management, L.P. v. Schneider*, 551 F. Supp. 2d 173, 190 (S.D.N.Y. 2008) ("Indeed because the content is relatively straightforward, the recordings will conveniently be examined in court by the jury. . . . Thus, the indices cannot be admitted into evidence under Rule 1006.").

Consistent with Rule 1006, before seeking its admission, the Government must make the original evidence underlying the summary and the summary itself available to counsel for Mr. Scott and Mr. Stanley for review. *See United States ex rel. Maris Equipment Co., Inc. v. Morganti, Inc.*, 163 F. Supp. 2d 174, 202 (E.D.N.Y. 2001) ("The Court acted well within its discretion in deciding not to allow the cost report summary in evidence. Maris never provided a list or description of the documents supporting the proposed 1006 exhibit; nor had it given the cost report summary to Morganti in sufficient advance of trial to allow meaningful review of the mass of material Morganti had received during the years of discovery to determine the accuracy of the cost report summary.").

If the Government, or any party, wishes to use an illustrative aid, not admitted into evidence, under Rule 107, they should request to do so at the pre-trial conference.

Accordingly, the motion to preclude the admission of summary charts will be denied, without prejudice to renewal at trial.

### C.  Motions *in Limine* by Arthur Stanley

Mr. Stanley seeks to preclude the Government from: (1) introducing evidence of Mr. Stanley's alleged participation in the "West Hell" gang; (2) introducing evidence related to Mr. Stanley's prior conviction and sentence; (3) introducing hearsay testimony of "Witness 2"; (4) introducing evidence of alleged retaliatory killings related to the murder of Mr. Velez; (5) introducing expert testimony regarding DNA evidence that was deemed "inconclusive"; and (6) presenting an opening statement.

The Court considers each motion in turn.

#### 1.  Gang Affiliation

Mr. Stanley argues that any evidence of alleged membership in the "West Hell" gang should be precluded from admission because it is not "inextricably intertwined" to the charged offense and even if such evidence were admissible under Rule 404(b) to show "motive," it is inadmissible under Rule 403. Stanley MIL at 8–10.

The Government argues that evidence of "Scott's leadership of West Hell, and Stanley's high-ranking role as Scott's number two" is admissible to show the "close relationship" between Mr. Scott and Mr. Stanley and supports the Government's theory of why Mr. Stanley would assist Mr. Scott in the charged murder. MIL in Opp. at 2.

The Court agrees, in part.

Under the Second Circuit's "inclusionary approach," some evidence suggesting gang involvement can be admitted to demonstrate a "criminal relationship" between two individuals involved in a crime. *United States v. Felder*, 993 F.3d 57, 78 (2d Cir. 2021); *see United States v. Christopher*, No. 23-6169-cr (L), 23-6204-cr (Con), 2024 WL 5135382, at *2 (2d Cir. Dec. 17, 2024) (upholding the admission of "limited evidence regarding the Defendants' alleged gang affiliation" as "probative of the Defendants' motive, intent, and opportunity to commit the crimes . . . as well as their relationship as coconspirators"). For the specific evidence proposed by the Government, however, the probative value is outweighed by substantial prejudice, making it inadmissible under Rule 403.

The Government seeks to introduce a witness who is "expected to testify that the defendants were both leaders of the West Hell gang." MIL in Opp. at 2. The specifics of the West Hell gang and alleged ranking of the Defendants is substantially prejudicial in comparison to the probative value of establishing the "closeness" of the Defendants' relationship. Testimony that Mr. Stanley was allegedly a leader in a criminal enterprise has a significant potential to lead the jury to form opinions on Mr. Stanley's propensity for violence or criminal activity that could unfairly influence the verdict. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.").

Indeed, in cases where evidence relating to gang involvement is allowed to show a relationship between defendants, courts are often careful to limit unnecessary prejudice. For example, in *United States v. Felder*, the Second Circuit affirmed the admission of a photograph "depicting the men in gang colors and making gang signs" as evidence of the relationship and

mutual trust between the defendants. *Felder,* 993 F.3d at 78. The Second Circuit noted that despite allowing the photograph into evidence, the district court "was careful to exclude from trial any evidence of [the defendant's] criminal participation with his co-conspirators in the 'YGz' street gang." *Id.* And, the Second Circuit expressed doubt that the photograph even led to a conclusion of gang involvement, noting that the clothing and hand gestures in the picture would not "readily be understood as gang signs by the average person" sitting on the jury. *Id.* In contrast to the evidence in *Felder*, the Government's expected testimony not only clearly asserts the Defendants' alleged involvement in the "West Hell" gang, but also describes them as leaders of that gang.

Furthermore, in the cases cited by the Government where more substantial evidence of gang affiliation was admitted, the charged crimes were directly related to the activities of the gang. *See, e.g.*, *Christopher*, 2024 WL 5135382, at *2 (evidence of gang affiliation was relevant to show motive when shooting involved "rival gang members"); *United States v. Ramsey*, No. 20-860, 20-877, 2021 WL 5022640, at *1, 4 (2d Cir. Oct. 29, 2021) (evidence of gang activity admitted to show "Pagett's motivation for removing Johnson" when "Johnson had been cooperating against the gang"); *United States v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020) (evidence of prior bad acts taken by defendants was admitted when those acts "were in connection with, and led to, the murder-for-hire conspiracy"). Here, the charged crime is not alleged to have been directly connected to the gang activity.

The Court is thus wary of admitting highly prejudicial testimony on Mr. Scott's and Mr. Stanley's alleged leadership in the "West Hell" gang, when less prejudicial evidence on their relationship could be offered with similar probative value. The Court does not foreclose the possibility, however, of the admission of other evidence to show the relationship between Mr.

Scott and Mr. Stanley that may suggest gang affiliation in a less prejudicial manner. The admission of any such evidence, though, would be better assessed in the factual context of the trial. *See In re MTBE*, 643 F. Supp. 2d at 476 ("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context." (internal quotation marks omitted)).

Accordingly, the motion to preclude evidence of gang affiliation will be denied without prejudice to renewal at trial.

### 2. Past Conviction and Sentence

Rule 404(b) prohibits the admission of crimes, wrongdoings, or other acts to "prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b)(1). Under Rule 609, however, evidence of a criminal conviction can be used in specific cases to impeach a witness. *See* Fed R. Evid. 609(a) ("The following rules apply to attacking a witness's character for truthfulness by evidence of criminal conviction . . . ."). Crimes "punishable by death or by imprisonment of more than one year" can be admitted subject to Rule 403. *Id.* 609(a)(1). And, all convictions, including those for misdemeanors, can be admitted if the crime involves a "dishonest act or false statement[.]" *Id.* 609(a)(2).

To admit evidence of a past conviction not related to a dishonest act, a court must balance the probative value against the prejudicial effect by considering "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Stephen v. Hanley*, No. 03- CV-6226 (KAM) (LB), 2009 WL 1471180, at *4 (E.D.N.Y. May 21, 2009) (citing *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)).

Mr. Stanley argues that any evidence of his past conviction and current life sentence should not be admitted because they offer minimal probative value and would be prejudicial. Stanley MIL at 11.

The Government states that it has no intention of offering any evidence related to Mr. Stanley's conviction and current sentence in its case in chief, but should Mr. Stanley testify, it may seek to use the conviction for impeachment purposes under Rule 609.

Given the parties' current positions, and the absence of sufficient detail of any convictions sought to be introduced right now, the Court will consider the introduction of evidence of Mr. Stanley's conviction, if and when the issue arises during trial.

Accordingly, the motion *in limine* to preclude introduction of Mr. Stanley's felony conviction and current life sentence will be denied without prejudice to renewal at trial.

### 3. Statements from Witness 2

Rule 802 prohibits the introduction of hearsay. Fed. R. Evid. 802. Under Rule 801(d)(2), however, an out of court statement offered against an opposing party that was "made by the party's coconspirator during and in furtherance of the conspiracy" is considered admissible non-hearsay. *Id.* 801(d)(2)(E). The "conspiracy" under Rule 801(d)(2)(E) "need not be identical to any conspiracy that is specifically charged in the indictment." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). But, "there must be some independent corroborating evidence of the defendant's participation in the conspiracy," beyond the statement itself. *Id.* (quoting *United States v. Tellier*, 83 F.3d 578. 580 (2d Cir. 1996)).

Mr. Stanley argues that any testimony from Witness 2 that implicates Mr. Stanley, who did not speak to Witness 2 directly, is inadmissible hearsay. Stanley MIL at 12. Specifically, Mr. Stanley argues that any statement from Witness 2 involving Mr. Stanley would have been heard

secondhand from Mr. Scott or Frank Chaney, another witness, and that there is insufficient

corroborating evidence to say there was a "conspiracy" with Mr. Scott or Mr. Chaney to meet the

requirements of Rule 801(d)(2)(E). *Id.*

The Government argues that it does not intend to illicit any hearsay testimony from

Witness 2 regarding statements from Mr. Chaney. Opp. to MILs at 5. The Government also

argues that any statements made by Mr. Scott to Witness 2 would only be admissible against Mr.

Scott under Rule 801(d)(2).

Given that the Government does not intent to introduce such evidence against Mr.

Stanley, and that the severance of trials will avoid any prejudice to Mr. Stanley caused by

evidence admissible only to Mr. Scott, the Court will deny this motion as moot.

Accordingly, the motion *in limine* to preclude statements from Witness 2 as inadmissible

hearsay will be denied as moot.

### 4.  Evidence Regarding the Death of Mr. Perry

Mr. Stanley argues that evidence related to the killing of Mr. Perry—allegedly a "cover-

up" or retaliatory killing—should be precluded. Stanley MIL at 13.

The Government argues that it plans to introduce "statements by Scott . . . that Scott

wanted to bond Perry out of jail and kill him," but otherwise does not "intend to introduce

evidence that Stanley (or Scott) were involved" in the murder of Mr. Perry. Opp. to MIL at 5.

The Government does state, however, that it intends to introduce the fact that Mr. Perry and Jeff

Antoine, another witness, are deceased as "the jury will naturally wonder where Perry and

Antoine are."

The Court agrees, in part.

To the extent that Mr. Stanley moves to preclude statements by Mr. Scott related to Mr. Perry, the Government seeks to admit these statements only as to Mr. Scott, and the issue is now moot in light of the severance.

To the extent that the Government wishes to introduce the general fact that Mr. Perry and Mr. Antoine have passed since the murder of Mr. Velez, the Court will determine the admissibility of such evidence in the context of the trial.

Accordingly, the motion to preclude evidence related to the death of Mr. Perry will be denied, without prejudice to renewal at trial.

### 5. DNA Evidence

Mr. Stanley argues that the Government should be precluded from introducing "inconclusive" DNA results under Rule 403 because such results would have little to no probative value and have the potential to confuse the jury. Stanley MIL at 14–16.

The Government argues that any prejudice caused by the "inconclusive" results does not substantially outweigh the probative value of such results, and that it should be permitted to show the full panel of results without redacting those that are "inconclusive." Opp. to MILs at 7–9.

The Court agrees.

While the "inconclusive" DNA results are unlikely to be highly probative, they are equally unlikely to be substantially prejudicial, if they are considered prejudicial at all. *See United States v. Donald*, 2023 WL 6958797, at *19 (D. Conn. Oct. 20, 2023) (declining to preclude "inconclusive" DNA results because the "inconclusive DNA test result is not, in and of itself, prejudicial"); *see also McFadden v. Pataki*, No. 06 Civ 13330 (KMK) (PED), 2011 WL 10500868, at *25 (S.D.N.Y. Apr. 6, 2011) ("In any event, an 'inconclusive' test result at best

connotes neither innocence nor guilt, and for this reason its relevance at trial would have been marginal at best."), *report and rec. adopted,* 2014 WL 1759795 (S.D.N.Y. Apr. 25, 2014); *United States v. Jakobetz*, 955 F.2d 786, 798 (2d Cir. 1992) (considering that "inconclusive results or a false negative" could "redound to the defendant's benefit, rather than to his prejudice"). There is thus no basis for exclusion under Rule 403.

As to Mr. Stanley's argument that the "inconclusive" results may "confuse the jury" or lead the jury to make a "mistaken inference," Stanley MIL at 16, this concern goes to the weight of the evidence and is better addressed through cross-examination at trial. *See Donald,* 2023 WL 6958797, at *19 ("To the extent that Mr. Wright is concerned about jurors misinterpreting the test result or drawing improper inferences, this argument goes to the weight of the evidence, not its admissibility. . . . Alone, this is not a sufficient reason to exclude the evidence." (citations omitted)); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) ("[R]espondent seems to us to be overly pessimistic about the capabilities of the jury and of the adversary system generally. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Accordingly, the motion *in limine* to preclude the admission of "inconclusive" DNA results will be denied.

### D. Opening Statements

Opening statements allow opportunity only to "state what evidence will be presented," and do not provide "an occasion for argument." *United States v. Dinitz,* 424 U.S. 600, 612 (1976) (Burger, C.J., concurring). In criminal cases, "the making and timing of opening statements can

be left constitutionally to the informed discretion of the trial judge." *United States v. Salovitz*, 701 F.2d 17, 20 (2d Cir. 1983).

Mr. Stanley moves to preclude the Government from making an opening statement as the statement would "serve no useful purpose for the jury" and run the risk of "(1) plac[ing] an unwarranted imprimatur of reliability on the evidence when it is eventually received, (2) prejudic[ing] the jury against Mr. Stanley even before evidence is admitted, and (3) open[ing] the door to improper argument." Stanley MIL at 19.

The Government moves for a court order to allow opening statements and argues that "short opening statements are critical to provide context to the jury at the outset of trial." Opp. to MIL at 11.

The Court disagrees.

Opening statements are "a privilege to be granted or withheld depending on the circumstances of the individual case." *Salovitz*, 701 F.2d at 20 (quoting *United States v. 5 Cases, More or Less, Containing "Figlia Mia Brand"*, 179 F.2d 519, 522 (2d Cir. 1950)*, cert. denied*, 339 U.S. 963 (1950)). There are no particular circumstances in this case that warrant opening statements. And, generally, due to the risk of improper argument and prejudice, "preclusion of opening statements seems the better rule." *United States v. Evans*, 629 F. Supp. 1544, 1547 (D. Conn. 1986); *see id.* (highlighting the "potential for abuse" and "numerous trial problems and appeals which may result" from opening statements in criminal cases).

Accordingly, the Court will deny the Government's motion for opening statements, and instead will permit a statement of the case to be read to the jury.

## IV.    CONCLUSION

For the reasons explained above, Mr. Stanley's motion to sever is **GRANTED**; Mr. Scott's motions *in limine* are **GRANTED in part** and **DENIED in part**; Mr. Stanley's motions *in limine* are **DENIED**; and the motion to make opening statements is **DENIED**.

Mr. Scott's motion *in limine* to preclude evidence of alleged gang affiliation is **GRANTED**.

Mr. Scott's motion *in limine* to preclude the admission of summary charts is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude evidence of alleged gang affiliation is is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude introduction of Mr. Stanley's felony conviction and current life sentence is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude statements from Witness 2 as inadmissible hearsay is **DENIED as moot**.

Mr. Stanley's motion *in limine* to preclude evidence related to the death of Mr. Perry is **DENIED**, without prejudice to renewal at trial.

Mr. Stanley's motion *in limine* to preclude "inconclusive" DNA results is **DENIED**.

The Court's rulings on the motions *in limine*, however, are "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." *Luce*, 469 U.S. at 41.

The Government's motion to make an opening statement is **DENIED**.

In lieu of an opening statement, the parties for Mr. Scott's trial shall endeavor to create a joint statement of the case or, if not joint, two separate statements by the pre-trial conference on

May 8, 2025. If not joint, the Court will determine the statement of the case to be read to the jury instead of opening statements.

The current trial schedule will remain in place as to Mr. Scott only, with jury selection to begin on May 15, 2025, and trial to begin on May 19, 2025.

Mr. Stanley's trial will be scheduled by the Court in consultation with the parties, at which time the necessary Speedy Trial Act findings will be made.

**SO ORDERED** at New Haven, Connecticut, this 29th day of April, 2025.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge